IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

PATRICIA NASH                                                                      PLAINTIFF

V.                               NO. 2:20-cv-00185-ERE

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

## ORDER

### I. Introduction:

On February 6, 2019, Patricia Nash filed a Title II application for disability and disability insurance benefits, as well as a Title XVI application for supplemental security income benefits. (Tr. at 19). In both applications, she alleged disability beginning on December 28, 2016.[1] *Id*. In an October 31, 2019 decision, an administrative law judge (ALJ) denied Ms. Nash's application. (Tr. at 30). The Appeals Council denied her request for review on July 14, 2020. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Nash has requested judicial review. For the reasons stated below, the Court[2] affirms the decision of the Commissioner.

---

[1] Nash amended her alleged onset date to June 1, 2018. (Tr. at 19).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.  **The Commissioner's Decision**:

At step one of the required five-step analysis, the ALJ found that Ms. Nash, who was 51 years old at the time of the hearing, had not engaged in substantial gainful activity since the amended alleged onset date of June 1, 2018.[3] (Tr. at 22, 29). At step two, the ALJ determined that Ms. Nash has the following severe impairments: joint dysfunction, spine disorder, and attention deficit hyperactivity disorder. (Tr. at 22).

After finding that Ms. Nash's impairments did not meet or equal a listed impairment (Tr. at 22-24), the ALJ determined that she had the residual functional capacity (RFC) to perform work at the light exertional level, with exceptions: (1) she can no more than occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; (2) she cannot climb ladders; (3) she can no more than frequently reach, handle, and finger, bilaterally; (4) she must avoid concentrated exposure to extreme heat and cold; (5) she must avoid concentrated exposure to humidity, wetness,

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of  impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

pulmonary irritants, and direct sunlight; (6) she can perform simple, routine, and repetitive tasks as well as make simple work-related decisions; (7) she can concentrate, persist, and maintain pace with normal breaks; and (8) she requires incidental interpersonal contact with simple, direct, and concrete supervision. (Tr. at 24).

The ALJ next found that Ms. Nash was unable to perform any past relevant work. (Tr. at 28). At step five, the ALJ relied upon the testimony of a Vocational Expert (VE) to find that, considering Ms. Nash's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as router and price marker. (Tr. at 30). Therefore, the ALJ found that Ms. Nash was not disabled. *Id*.

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Ms. Nash's Arguments on Appeal

Ms. Nash contends that the evidence supporting the ALJ's decision is less than substantial. She argues that the RFC did not fully incorporate her limitations, the ALJ did not properly evaluate Ms. Nash's subjective complaints, and the Appeals Council did not properly evaluate evidence that Ms. Nash submitted after the

hearing. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

In her arguments, Ms. Nash focuses on limitations arising from problems in her spine. At a doctor's appointment in June 2018, she had normal range of motion in her back. (Tr. at 747). She was ambulatory and in no acute distress. (Tr. at 743). Ms. Nash had a lumbar MRI in April 2019 that showed degenerative disc disease with involvement of the nerve root. (Tr. at 1146-1148). However, at a clinical examination in May 2019, Ms. Nash had minimal pain in her cervical spine, with normal alignment and normal muscle tone. (Tr. 1204-1207). Her lower and upper extremities appeared normal. *Id*. She also had normal range of motion in the lumbar spine. *Id*. Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Ms. Nash routinely told her doctors that she was exercising multiple times a week, which included walking and doing core strengthening. (Tr. at 1128). The ability to exercise suggests that a claimant has an increased functional capacity. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Moreover, she treated her back pain conservatively with chiropractic care and heat and ice therapy. (Tr. at 631-642, 1151-1161). She said seeing a chiropractor helped. (Tr. at 1119). Impairments that are controllable or amenable to treatment do not support a finding of total disability.

*Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Ms. Nash said that hot showers relieved her pain, to the point that she was independent in ambulation, climbing stairs, bathing, and dressing. (Tr. at 1113-1114). Doctors recommended aquatic therapy and home exercises. (Tr. at 627). They also recommended that she follow a healthy diet and maintain a healthy weight. (Tr. at 1116-1130). In March 2018, her doctor said that from a functional standpoint, she was doing okay. (Tr. at 725).

While Dr. James Adametz, Nash's PCP, said in August 2019 that she had terrible degenerative disc disease in her back, at that visit she had normal gait and coordination. (Tr. at 1207). She had no joint swelling and no numbness. (Tr. at 1208). An ALJ can discount a doctor's opinion partially or in its entirety if it is inconsistent internally or with other evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000).

A consultative medical examiner found that Ms. Nash could rise from a squatting position without assistance, could stand on tiptoes and heels, could tandem walk without problems, and was able to bend and squat without difficulty. (Tr. at 638-642). The examiner noted that Ms. Nash was independent with activities of daily living.[4] The examiner concluded that Ms. Nash could sit, walk, and stand for a full

---

[4] Indeed Ms. Nash acted as caregiver for her mother since 2016, and she said she could do light

workday, without limitations. *Id*. This opinion is consistent with the generally benign medical record.

Ms. Nash argues that the ALJ's assigned RFC did not fully capture her functional limitations. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

The consultative examiner found no functional limitations, and no doctor placed any functional restrictions on Ms. Nash. She could perform a variety of daily activities. The ALJ considered this in arriving at the RFC. He also discussed the opinions from the Disability Determination Services medical experts that Ms. Nash could perform medium work. (Tr. at 98-102, 156-158). The ALJ specifically said that he believed Ms. Nash was more limited than those doctors assessed, and thus,

---

cleaning, drive, shop in stores, water her plants, and go to church twice weekly. (Tr. at 316-321, 666). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

assigned an RFC for light work. This indicates that the ALJ considered the record as a whole when formulating the RFC, and the RFC did not exceed Ms. Nash's abilities.

Second, Ms. Nash argues that the ALJ did not fully consider her subjective complaints. When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id*.

The ALJ discussed the nature of Ms. Nash's pain, how that pain affected her daily life, what sort of activities she was able to perform, and the objective medical evidence. (Tr. at 20-26). He concluded that her complaints of pain were not entirely consistent with the evidence in the record as a whole. (Tr. at 25). The ALJ's analysis of Ms. Nash's subjective complaints was sufficient.

Finally, Ms. Nash asserts that the Appeals Council did not give proper weight to evidence from Dr. James Adametz. The evidence in question was dated December

8

2019, two months after the ALJ issued the decision. (Tr. at 2). While Dr. Adametz said, in the later received records, that surgery may be recommended, he said it may not do much to relieve her pain. (Tr. at 8-11). Also, Dr. Adametz's clinical notes a few months earlier showed generally normal musculoskeletal findings. (Tr. at 1204-1207). The new evidence did not show stark changes in condition, and it is not so different from the prior evidence in the record that it would upend the ALJ's decision. Thus, the Court agrees with the Appeals Council that the clinic notes submitted after the hearing do not relate to the period at issue and, in any event, do not show a reasonable probability that they would change the outcome of the case. (Tr. at 2). The proper course, if Ms. Nash believes her condition deteriorated *after* the relevant time-period, is to file a new application. *Id*.

### IV. Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC fully incorporated Ms. Nash's limitations, and the ALJ properly analyzed her subjective complaints. Finally, the Appeals Council did not err in its review of evidence submitted after the hearing. The finding that Ms. Nash was not

disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 1st day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE